DAWKINS, J.
This record presents the consolidated suits of Dr. J. L. Leopold individually, and of himself and wife, on behalf of their minor son, Girard Leopold, against the defendant for damages on account of personal injuries alleged to have been sustained in a collision between an automobile of the plaintiff and the train of the defendant, which the petition alleges was due to the fault and negligence of the defendant.
The answer admits the collision, denies any negligence on the part of defendant, and pleads contributory negligence in the plaintiffs.
There was judgment in the lower court in favor of Dr. Leopold for the sum of $4,000, and in favor of himself and wife for the benefit of the minor, Girard Leopold, in the sum of $1,000.
Defendant appealed, and plaintiffs have answered, praying that the judgments be increased to the sum of $26,500 as to Dr. Leopold, and to $5,000 as to the minor.
The Pacts.
Dr. Leopold is a physician and surgeon residing in the town of Grand Cane in De Soto parish, and on the afternoon of May 26, 1916, about 4:30 o’clock p. m., left his home and started to answer the call of a patient residing some 4 miles northwest of said town. He was riding in an Overland roadster, accompanied by his" 18 year old son, Girard Leopold, who acted as chauffeur. In order to reach their destination, they proceeded up the model dirt road, which runs in a northerly direction from Mansfield to Shreveport parallel with and on the west side of the railroad track of defendant for a distance of some 2 miles from Grand Cane, to a point where another road branches off in an easterly direction, and crosses said railroad practically at right angles, about 60 or 70 feet from the model road, and at a point called “Hoel’s Crossing.” As they turned into the road running east, they struck a deep sand bed, which caused the engine of the automobile to’ stop. Xoung Leopold got out, cranked the engine, and the car started on across the railroad track. Before the rear wheels of the automobile could clear the rails, the locomotive of a north-bound passenger train struck and wrecked the car, severely injuring the plaintiff and his son. Both were knocked unconscious, and were placed on the train and taken to a hospital in the city of Shreveport, where the son remained a week or ten days, and the father three or four weeks.
Dr. Leopold says that the automobile was running about 15 miles per hour as it approached the point where they turned out of the model road, and, as it turned, the speed was reduced to about 8 miles, but when they struck the sand bed, the engine stopped entirely; that on account of having no self-starter, his son had to get out and crank the engine, and as he did so, he, Dr. Leopold, looked up and down the road, listened, and mentioned to his son the fact that it was about train time; that he saw and heard no train approaching, and they started on across the track; that he never looked any more for the approach of a train, for the reason that his attention was attracted to his son’s manipulation of the car, as the latter had *1003 been away from home several months, and he was afraid the son would not be able to operate it readily; that they stopped at the point where they could see farthest down the track until getting upon the dump; that there were bushes, weeds, and other obstructions on the right of way which obscured his vision so that he could not see more than about 400 feet to the south, the direction from which the train came; that the point where they stopped was about 25 feet from the crossing, and that the approach to the rails was rough and steep, not having been repaired by the railroad company since its construction; that there was a deep cut some 400 or 500 feet below the crossing; that no bell was rung or whistle blown, and that his first knowledge of the approach of the train was when he was upon the track and looked and saw it some 60 or 70 feet away; and that after being struck, he knew nothing, more until he found himself in the hospital at Shreveport.
Girard Leopold, the other occupant of the car, was not present at the trial, and his testimony was not taken. No reason is given for his failure to testify.
The engineer did not see the automobile until about the moment the locomotive struck it. The fireman was shoveling coal into the fire box, and knew nothing of the presence of the car until it was struck.
The testimony is conflicting as to whether or not the whistle was blown or the bell rung for this crossing, but, all in all, we think it preponderates against those precautions having been taken, and that the defendant was otherwise guilty of negligence in allowing the crossing to get in such a bad condition, and permitting obstructions to grow upon its right of way at such a dangerous place.
These conditions placed upon both parties the duty of exercising extreme care at this crossing; and, inasmuch as Dr. Leopold admits that he never looked any more after stopping until the train was almost upon him, we must conclude that he, too, was guilty of negligence. According to his testimony, the automobile, after stopping, was traveling not more than 5 or 6 miles per hour on an incline, and we must conclude that it could have been readily stopped. An actual measurement discloses that from the point where the automobile stopped, a train could be seen approaching from the south a distance of 480 feet, and he had only 25 feet to go before reaching the track. It is not claimed that the train was traveling over 25 miles per hour, and if he was only traveling 5, if he actually looked and listened at the point where he says he did, he should have had time to travel nearly four times the distance necessary to clear the track before the train reached the crossing. After starting his car, one glance to the south at any moment before reaching the crossing would have apprised him of the train’s approach, and we have no doubt but that the car could have been stopped almost instantly .going up an incline, even if it had necessitated backing down the hill. Some effort is made to excuse ,his failure to look again on account of the condition of the crossing, but the doctor says it was his fear that his son did not remember fully how to operate the car, on account of his absence. Be that as it may, he admits that he knew it was about train time, having mentioned it to his son, and the duty to look out for the train was far more important than the matter mentioned. He was not driving himself, so that he was compelled to have his attention on the car. It is true that the engineer did not see the automobile, as above indicated, until about the moment it was struck, but his vision was cut off largely by the bulk of the locomotive, and the fireman was engaged in firing the engine.
The active contributory negligence of the plaintiff and his son having continued down to the moment of the collision, and there *1005 being no occasion, in our opinion, for the application of the doctrine of the “last clear chance,” it follows that they must fail in their demands. Tucker v. I. C. Ry. Co., 141 La. 1096, 76 South. 212, and authorities there cited.
For the reasons assigned, the judgments appealed from are annulled, avoided, and reversed, and the plaintiffs’ demands rejected at their costs in both courts.