No. 2083

Second Circuit Appeal

ALEXANDRIA REFINING CO., INC., v. MISSOURI PACIFIC RAILROAD CO.

(January 19, 1925, Opinion and Decree)
(March 30, 1925, Rehearing Refused)

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Railroads—Par. 78.**
Where the flagman of a railroad comapny without making sure that the crossing was clear, signaled to the engineer; who started up his engine and backed same over a motor truck which was stalled on the track, the railroad company had the last clear chance to avoid the accident and is liable for the damages resulting.

2. **Louisiana Digest—Railroads—Par. 81.**
The damages assessed for the loss of a motor truck hit by a train include the cost of replacing the truck but do not include any damage for the loss of the use of the truck.

ON APPLICATION FOR REHEARING.

3. **Louisiana Digest—Railroads—Par. 65.**
Where a motor truck had been for sometime halted on the railroad track when backed into by defendant's train whose crew was negligent in not discovering it and actively so in backing against it; the negligence of the train crew was the proximate cause of the accident while the negligence of the truck driver was merely passive, and hence not the proximate cause.

(Civil Code, Art. 2315. Editor's note.)

Appeal from the Thirteenth Judicial District Court of Louisiana, Parish of Rapides. Hon. Levin L. Hooe, Judge.

REYNOLDS, J.

Action to recover $1185.17 for damage to truck run down at public crossing on railroad track.

Defendant denies liability and pleads contributory negligence in bar of plaintiff's right to recover.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Overton & Hill, of Alexandria, attorneys for plaintiff, appellant.

Hawthorne & Stafford, of Alexandria, attorneys for defendant, appellee.

STATEMENT OF FACTS

In this case plaintiff's driver of one of its tanks stopped on the railroad track at a public crossing and got down to adjust some oil drums that were about to fall; while on the north side with his vision cut off from the south, the engine and car of defendant came up on the south side of the truck to within six or seven feet and was stopped.

Steve Irwin, defendant engineer, testified (page 57):

"A. Yes, sir, we stopped six or seven feet from the crossing or possibly right on the crossing and we were not far enough to get over this switch from one to two and when Burrell came back there, he gave me a signal to go ahead just a few feet, and that is when I shoved the truck. We didn't hit the truck, we shoved it."

This statement of the engineer, that the car was stopped within a few feet of the truck, and afterwards, on signal of the brakeman backed onto the truck, is corroborated by W. M. Johnson, a witness for defendant (page 67), when he said:

"A. Well, the engine started but the engine stopped and I heard him reverse the engine and I knew naturally that they were going back on the opposite track, so I turned around in my seat to look back this way and I heard him throw the engine over to go ahead again, and I looked ahead, the engine was already in motion, and when he applied steam the engine moved ahead and when I looked ahead I saw the radiator. In fact, I couldn't tell what it was and looked out again and hollered to the engineer to stop and he stopped instantly."

Also by Will Burrows, defendant's brakeman, who testified on page 75 as follows:

"A. They hadn't gone over the switch when they first stopped and I had to signal them ahead far enough for me to throw the switch."

After the engine and car was stopped, and while the truck was standing still, with the driver on the opposite side from the engine, not knowing of its presence. The brakeman signaled the engineer to back the car over a public crossing on which the truck was standing still and the engineer backed the cars over the truck causing the damage sued for.

### OPINION

Under the evidence it is clear that the defendant railroad company backed its engine and car over a public crossing on which there was a truck standing still, without first seeing that the crossing was clear. The brakeman, Will Burrows, said, Trs., page 72: "I could see that the crossing was clear," but he was mistaken as to this for the crossing was not clear. If it had been the accident could not have happened.

The undisputed evidence in this case shows that the conditions existing at the public crossing, where the accident occurred, just prior to the accident, were as follows:

The plaintiff's truck was standing still on the railroad track over the public crossing, with the parties in charge of the truck on the opposite side of the truck from the engine and car, working to make secure the oil drums on the truck, unaware of the approach of defendant's engine and car.

The flagman of the defendant company, without making sure that the crossing was clear, signaled the engineer; he started up his engine and backed same over plaintiff's truck.

Under the circumstances the defendant railroad company had the last clear chance to avoid the accident. Humanity and the safety of the general public demands, and the law requires, that railroad companies must make sure that a public crossing is clear before they back their trains across same.

The judgment of the lower court is reversed.

### ON QUESTION OF DAMAGES

Plaintiff presented a bill to defendant for $855.17 for parts furnished and for work done in repairing its truck. Itemized bill showing the aggregate amount of $855.17 was introduced in evidence under filings for plaintiff from 1 to 11 inclusive and established a damage to that amount.

Plaintiff further asked for $330.00 damage for the loss of the use of said truck during the time it was being repaired, but there is no evidence to show any actual damage sustained by the plaintiff from the loss of the use of the truck, nor is there any evidence showing that the truck could not have been repaired in one day or that thirty-three days were required to repair said truck. The item claimed for loss of the use of the truck must be dismissed as of non-suit.

For the above reasons the judgment appealed from is avoided and reversed, and it is now ordered, adjudged and decreed that the plaintiff, the Alexandria Refining Co., Inc., do have and recover of the defendant, the Missouri Pacific Railroad Company, judgment for the sum of eight hundred and fifty-five and 17-100 dollars with five per cent per annum interest thereon from this date and for all costs in both courts.

### ON APPLICATION FOR REHEARING

CARVER, J. In support of their application for a rehearing, defendant's able counsel file two briefs, one on the facts and one on the law.

There are two very definite theories as to the facts. That of the defendants is that after the train, consisting of a locomotive and a tender, pushing a cattle car, had come to a halt within six or eight feet of the crossing, and while the locomotive was still puffing and the bell ringing and while the brakeman, who had just previously looked at the crossing and found it clear, was going back to the switch to throw it, the driver of the truck stopped it on the track and got down to adjust the drums, and that the engineer, on signal from the brakeman, slowly proceeded towards the crossing, striking the truck.

Their argument is that after so recently seeing that the crossing was clear it was not negligence on the part of the train crew to push the cattle car across the crossing without a fresh inspection.

The theory of the plaintiff is that when the driver of the truck stopped it on the track the cattle car was two or three hundred yards from the crossing, standing still. The driver so testified, and stated, further, that when the cattle car was pushed against the truck he heard no bell, whistle or escaping steam.

Allowing for an under-estimate of the time it took to adjust the drums and an over-estimate of the distance between the crossing and the cattle car at the time the truck was halted, we think the truth is that when the halt was made the train was a considerable distance away; that while the driver of the truck and his assistant were adjusting the drums the train was run towards the crossing, stopping close to it; that the brakeman, who says he was on the cattle car which struck the truck, not on top of it but on the east side of it, got down and without going any closer to the crossing walked back towards the switch where he gave the signal to proceed towards the crossing, which the engineer then did, striking the truck.

The brakeman says, page 72:

"I rode up within about eight or ten feet north of the switch and could see that the crossing was clear and had to get off and walk back to throw the switch so that he could back in No. 2."
"Q. How far were you from the crossing when you got off this car?
"A. Little over a car length or more.
"Q. What part of the car were you riding?
"A. Head end of the car.
"Q. Were you on top of the car?
"A. No; hanging on the side of it.
"Q. After you got down, did you see, did you look up towards the crossing?
"A. Yes, sir."

None of the crew pretended to keep any lookout except the brakeman who, as shown by his own testimony, assumed that the crossing was clear because from his position on the ground near the far end of the cattle car he saw nothing on it; but in our opinion the truck was then on the track, the hind wheels about the center of it, and if the brakeman looked toward the crossing and failed to see the truck it must be because the cattle car was between him and it.

Johnson, the fireman on the locomotive (page 67), sitting on the left or southwest side of it, saw the radiator of the truck after the signal to proceed had been given and the locomotive had started and called to the engineer to stop.

In the brief on the facts counsel quote Barron, the driver of the truck, as follows:

"I stopped the truck. Mr. Glasscock said, 'We're on the crossing'; I stopped the truck and I climbed the top of the truck and looked down and saw the box car in front of the engine."

Counsel seem to think this means that immediately after stopping he climbed the truck and saw the cattle-car right at him. His subsequent answers, though, show that he did not mean this but meant that when

he climbed the truck, after adjusting the drums, the cattle-car was right at him.

He was asked, page 5:

"Q. When you stopped the truck, did you look up and down the track?
"A. Yes, sir.
"Q. What did you see?
"A. Saw the empty car there and Brown and brakeman at the depot.
"Q. Where did you see the empty car?
"A. Between where I was and the planer mill.
"Q. About how far from you?
"A. Two or three hundred yards down there.
"Q. When you looked up and down the track you saw a stock car?
"A. Yes, sir.
"Q. Was it rolling towards you?
"A. No, sir; standing still."

### AS TO THE LAW

In their brief on the law defendant's counsel say:

"Our point is that where both the plaintiff and the defendant are guilty of negligence, which negligence continues up to the time of the accident, the law of Louisiana is that the doctrine of last chance does not apply to such a situation and plaintiff's contributory negligence will bar a recovery."

They cite in support of this proposition the following Louisiana cases:

Young vs. La. Western Ry. Co., 153 La. 133, 95 South. 511.

Callery vs. M. L. & T. R. R. Co., 139 La. 770, 72 South. 222.

Leopold vs. Texas & Pacific Ry. Co., 144 La. 1000, 81 South. 602.

Bertucci vs. N. O. R. & L. Co., 155 La. 451, 99 South. 400.

Lofton vs. L. R. & N. Co., 135 La. 33, 64 South. 972.

Wolf vs. N. O. R. & L. Co., 133 La. 891. 63 South. 392.

Sutton vs. Lee Lumber Co., 121 La. 557, 46 South. 649.

Castile vs. O'Keefe, 138 La. 479, 70 South. 481.

Harrison vs. La. Western Ry. Co., 132 La. 761, 61 South. 782.

Nelson vs. R. R. Co., 140 La. 676, 73 South. 769.

Tucker vs. I. C. R. R. Co., 141 La. 1096, 76 South. 212.

In some of these cases it is true the doctrine is stated as broadly as counsel states it, but in some of them is expressed and in the others we think is implied a qualification which counsel overlooks. This is that the plaintiff's negligence must not only have continued down to the moment of the accident and contributed thereto, but that it must have been in part at least the proximate cause thereof. In all the above cases the negligence of the plaintiff did contribute as such proximate cause. The first three were collisions at crossings between trains and automobiles and the next two collisions at crossings between a train or street car and wagons actively contributed to the accident by going upon the track just as the train was about to reach the crossing—too late to afford the train men any chance to avoid the accident.

In the next two cases (Wolf and Suton) the injured parties stepped upon the track just in front of the car or train.

In the Castile and Harrison cases they stepped too near it.

In none of these cases did the court find that the train crew had a clear chance to avert the accident after they discovered or after they should have discovered the danger. Of course, the doctrine of last chance did not apply.

In the following cases the parties injured or killed were guilty of negligence continuing down to the moment of the accident, notwithstanding which the defendants were held liable.

McGuire vs. V. S. & P. Ry. Co., 46 La. Ann. 1543, South.

McClanahan vs. V. S. & P. Ry. Co., 111 La. 782, 35 South. 902.

Blackburn vs. L. R. N. N. Co., 144 La. 520, 80 South. 708.

Lamkin vs. McCormick, 105 La. 418, 29 South. 952.

In the McGuire, McClanahan and Blackburn cases the parties killed were drunk and lying on or near the track, which the court characterized as great negligence; but their negligence at the moment of the accident was passive while that of the defendants was active.

In all three cases the court held that it made no difference whether the negligence of the defendant consisted in failing to take proper steps to avert it after seeing the danger, the defendant being liable in either case.

We think this case governed by the doctrine of those decisions and not by that applied in the cases cited by defendant; believing as we do that the truck was and for some time had been halted on the track when backed into by defendant's train whose crew was negligent in not discovering it and actively so in backing against it, when such negligence, therefore, being the proximate cause of the accident, while the negligence of the truck driver, though continuing down to the moment of the accident, was at that time merely passive and hence not the proximate cause but only a condition of the accident.

Being of opinion that our own jurisprudence would control were that of the other states different, we have not examined the numerous decisions from other states cited by defendant's counsel; but the propositions in support of which the decisions are cited seem to us consistent with the views herein expressed.

No special complaint is made of the amount of damages awarded.

Rehearing refused.