No. 3121

Second Circuit

---

PYLANT v. C. R. I. & P. RY. CO.

---

(February 3, 1928. Opinion and Decree.)
(March 14, 1928. Rehearing Refused.)
(May 6, 1928. Writ of Certiorari and Review denied by Supreme Court.)

---

(*Syllabus by the Editor*)

1. **Louisiana Digest—Automobiles—Par. 5; Railroads—Par. 59, 63.**

Where driver of a motor truck was driving it very slowly so that it could have been stopped in much less distance than 35 feet the engineer of a train approaching the crossing had the right to assume that driver would stop before going upon the track.

2. **Louisiana Digest—Automobiles—Par. 4, 5; Railroads—Par. 59, 63.**

Where driver of a motor truck was driving very slowly approaching a railroad crossing he was negligent in driving upon the track directly in front of a train and this negligence continued down to the moment of the collision.

3. **Louisiana Digest—Automobiles—Par. 5; Railroads—Par. 59, 63.**

Where there is no evidence that the train-man should have in the exercise of ordinary care, apprehended the purpose of the driver of a motor truck to cross slowly in front of the approaching train or that there was ample time for the train to have been stopped after the truck had been negligently placed in a position of danger, driver of truck cannot recover damages.

Appeal from the Third Judicial District Court, Parish of Union. Hon. S. D. Pearce, Judge.

Action by John Pylant against Chicago, Rock Island & Pacific Railway Co.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Crow and Coleman, of Shreveport, and S. L. Digby, of Ruston, attorneys for plaintiff, appellant.

Barksdale, Warren and McBride, of Ruston, attorneys for defendant, appellee.

WEBB, J. This suit was instituted by plaintiff, John Pylant, to recover judgment against defendant, Chicago, Rock Island and Pacific Railway Company, for damages for personal injuries sustained by plaintiff as the result of a collision between a motor truck being driven by plaintiff and a train operated by defendant.

The collision occurred in the corporate limits of Bernice, in the Parish of Union, during the afternoon of December 5, 1925, on one of the streets of the municipality, which is crossed approximately at right angles by three tracks of defendant, and resulted in practically demolishing the motor truck, owned by J. E. Buckley, in whose employment plaintiff was engaged at the time, and in severely injuring plaintiff,

and in the death of Charlie Ford, a boy thirteen years of age, who was in the motor truck being driven by plaintiff, Pylant, and there were three suits filed against the defendant, including the present, and the others by J. E. Buckley to recover for repairs to the motor truck, and by M. L. Ford, father of Charlie Ford, for the loss of affection, companionship and aid and comfort sustained by him in the death of his son.

The three cases were consolidated for the purpose of trial, and judgment being rendered against all of the plaintiffs, each appealed and appear on the docket of this Court under the number and style above, and Nos. 3120, James E. Buckley versus Chicago, Rock Island & Pacific Railway Company, and 3119, Martin L. Ford versus Chicago, Rock Island & Pacific Railway Company, all this day decided.

The defendant's line runs approximately north and south through Bernice, and on the street where the collision occurred, which runs east and west, three tracks, referred to in the evidence as the "main," "house," and "team" tracks, cross the street and are practically parallel at the point where they intersect the street, the "team" track being east of the "house" track about sixty feet, and the "house" track being east of the "main" track about fourteen feet.

At a point on the "main" track at an approximate distance of three hundred feet from the street crossing, is a switch stand from which point the "house" track diverges from the "main" track, and at a point on the "house" track, approximately sixty feet north of the switch stand on the "main" track, there is another switch stand from which the "team" track diverges from the "house" track, continuing until it reaches the street crossing, and

thence across the street for some distance, north, where there is located a platform from which cotton, or other articles to be shipped, may be loaded on cars placed at that point.

On the afternoon of the accident a north bound freight train stopped south of the switch stand on the "main" track, and the locomotive was cut loose and used in switching operations and with the object of placing empty cars at the platform on the "team" track north of the street intersection, and while the trainmen were engaged in switching the cars onto and over the "team" track, Pylant, driving the motor truck on the street, approached and came upon the "team" track from the east, where one of the cars which the trainmen were handling on the "team" track collided with the truck, with the results stated.

The plaintiffs in each of the suits alleged that the collision was due to the negligence of the defendant, charging that in the switching operations a box car had been thrown onto the "team" track, where it stopped at a point south of the street crossing and in such situation as to obscure and render it impossible for one approaching the "team" track to see a train on the "team" track approaching south of the box car, and further, that the cars being switched over the "team" track were driven at an excessive rate of speed, without a flagman being stationed at the street crossing, and without a lookout being maintained or any warning signals being given of the approach of the cars, and other charges of negligence which are not pressed here, with the exception that it is contended that, even though it be held the driver of the motor truck, Pylant, was negligent in failing to stop, look and listen before driving upon the track, the accident could have been avoided had the trainmen

exercised ordinary care after the driver of the truck had placed the truck in a perilous position.

We find, as the trial court did, that the evidence established that there was not a flagman stationed at the street crossing and that there was not a proper lookout maintained by having a brakeman stationed on the front of the cars, although there was a brakeman running along the side of the train near the end nearest the crossing, and although the engineer, who had some view of the street from which Pylant approached the crossing, maintained a lookout, and although there was another brakeman riding on the cars who could transmit to the engineer the signals given by the brakeman running along the side of the train, and we also agree with the Court in its finding that Pylant, the driver of the truck, did not stop the truck and look and listen before driving upon the track, and even if the box car was standing next to the street crossing, it did not obstruct the view of Pylant, who, had he looked, would have seen the approaching train, and we also concur in the finding of the Court that the evidence did not establish that the train of cars was being driven at an excessive rate of speed, and that the bell on the locomotive was ringing as the train approached the crossing; we differ, however, with the trial court as to its finding that a box car was standing on the "team" track, and that it was struck by the train and thrown onto the crossing, striking the truck, but we find that the evidence establishes that the car which struck the truck was coupled to and a part of the train being shoved over the "team" track.

In view of our differing with the trial court as to the finding of fact in the respect stated, without quoting the evidence, we will state that all of the wit-

nesses who claimed to have noticed the switching operations, with the exception, possibly, of J. E. Buckley, one of the plaintiffs, who was inside of his store during the switching operations, stated that the "team" track had been cleared of all cars, and there was not any one who claimed to have seen a box car thrown onto the "team" track by a "flying switch," and although J. E. Buckley and Pylant, the present plaintiff, were positive a box car was standing on the "team" track in the situation alleged by plaintiff, and their testimony is somewhat supported by other witnesses, the trainmen, who were the conductor, engineer and three brakemen, testified that the car which struck the truck was coupled to and a part of the train, and their testimony is supported by the station agent and by two disinterested witnesses.

It appears from the written opinion of the trial court, that he accepted the version of the witnesses for the plaintiff rather than that of the trainmen, for the reason that he found that a "flying switch" had been made during the switching operations, and under a misapprehension of the testimony of the trainmen that they had not mentioned the "flying switch" in their minute detail of the operations, he appears to have concluded that the trainmen had wilfully withheld something, and accepted the version of plaintiff's witnesses as to the fact.

We find, however, that the trainmen did mention the "flying switch," designating it as a "drop," and testifying that the drop was made onto the "house" track, and their testimony is supported in that respect by at least one witness who was disinterested, and being of the opinion that the reason given by the Court for ignoring the testimony of the trainmen was erroneous, and that the trainmen were in a better position to have noted their actions, and the notes of their testimony not indicating anything else than that they were thoroughly conversant with the facts as to which they testified, we are of the opinion that their testimony is of greater weight than that offered by plaintiffs, who carried the burden of proof.

Under the facts stated, conceding that the defendant was negligent in failing to maintain a proper lookout, and that Pylant was not negligent in failing to stop, assuming the speed at which he drove the truck as he approached the track was such as would have enabled him to exercise his senses of sight and hearing without stopping the truck, as apparently contended by plaintiff, plaintiff must be held to have seen the approaching train.

"The presumption of law, *juris et de jure*, is that a plaintiff saw a thing he should have seen had he looked, and that he failed to look at the proper time and in the proper manner if he did not see the things he should have seen by looking." (Gibbens vs. N. O. Terminal Co., 1 La. App. 371; also, same case, 159 La. 347, 105 South. 367; Kelly vs. Schmidt & Zeigler, 142 La. 91, 76 South. 250; Burton vs. Ill. Cent R. R. Co., 3 La. App. 367.)

Considering the plaintiff's conduct from the most favorable point of view, he was guilty of negligence which contributed to his injury. Murray vs. Pontchartrain R. R. Co., 31 La. Ann. 490; Barnhill vs. T. & P. Ry. Co., 109 La. 43, 33 South. 63; Callery vs. M. L. & T. R. R. & S. S. Co., 139 La. 763, 72 South. 222; Tucker vs. Ill. Cent. R. R. Co., 141 La. 1096, 76 South. 212; Young vs. La. West. Ry. Co., 153 La. 129, and unless it was shown that the trainmen could have, in the exercise of ordinary care, avoided the accident after the plaintiff had placed the truck in a perilous position.

The contention of plaintiff in this re-

spect appears to be based upon the testimony of the engineer, who stated that he had seen the truck at a point which the evidence shows to have been approximately twenty-five or thirty-five feet from the track, and that the train, at the speed it was running, could be stopped in a short distance, and on the assumption that the truck, after it had been struck by the train, had been pushed in front of the cars across the width of the street, which was said to have been forty or fifty feet wide.

While the evidence shows that the truck was in the position assumed, after the train was stopped, it does not show at what point on the street it was struck, neither does it establish the distance within which the train could have been stopped, and the only definite fact established was that the engineer on receiving a signal from the brakeman (who stated he had attempted to warn the plaintiff and had immediately signaled the engineer) had applied the means at his hand to stop the train.

The evidence shows plaintiff was driving the truck at a very slow rate of speed, and that it could be stopped in a much less distance than thirty-five feet, and the engineer having the right to assume that plaintiff would stop before going upon the track (Cook vs. L. & N. W. R. R. Co., 130 La. 917, 58 South. 767; Hurt vs. Southern Ry. Co., 205 Ala. 175; Basin vs. Ala. Great Sou. R. R. Co., 179 Ala. 299; Johnson vs. Director General (N. H.) 125 A. 147), we think under such conditions, the negligence of the plaintiff must be held to have continued down to the moment of the collision (Leopold vs. T. & P. Ry. Co., 144 La. 1000, 81 South. 602; Hammers vs. Col. S., N. O. & P. R. Co., 128 La. 648, 55 So. 4; Harrison vs. Louisiana West. R. Co., 132 La. 767, 61 So. 784), in default of proof that the trainmen should have, in

the exercise of ordinary care, apprehended the purpose of Pylant to drive over the crossing in front of the approaching train, or that there was in fact ample time for the train to have been stopped after Pylant had placed himself in a position of danger, as to which the record does not furnish any proof, plaintiff could not recover.

The judgment appealed from is therefore affirmed.