JOHNSON, Judge.
The plaintiff, Manuel Rico, and his collision damage insurer sued the Texas & New Orleans Railroad Co., for personal injuries to plaintiff, Manuel Rico, and for automobile property damage. The suit was dismissed and the plaintiffs have appealed.
The locale of the accident was in Jefferson Parish on Fourth Street in the Town of Harvey, Louisiana. Fourth Street parallels the Mississippi River on the West side. Between the highway and the river is the main line track of the railroad, running parallel to the street. The evidence does not show how far the main track is from the street. Just above where this accident happened, a spur track branches from the main line away from the river and crosses Fourth Street at an angle toward the south. The crossing is at street level. At about 7:30 p. m., on July 23, 19S6, the plaintiff, Manuel Rico, had entered Fourth Street from Destrehan Avenue, driving his Buick automobile. Upon entering Fourth Street, said plaintiff turned left to go up-river and across the spur track. At that time a diesel switch engine, belonging to defendant and operated by its employees, was proceeding down the railroad track parallel to Fourth Street, took the spur track to cross the street. The engine was in backup position. When the back end of the engine, the forward end of its movement backwards, was near the middle of the street, the left front corner of plaintiff’s automobile struck the near forward *199 corner of the engine, with resulting personal injuries to Manuel Rico and damages to the car.
The composite testimony of all plaintiffs’ witnesses is essentially the same as to their observation and knowledge of what happened immediately prior to and at the moment of the impact. Mr. Barras was driving on the same .road in the same direction as plaintiff at a “car’s distance” behind the plaintiff. Mr. Monteith was a passenger in plaintiff’s car, sitting on the front seat beside plaintiff. Mr. Guidry, Rico’s father-in-law, was in front of his barbershop on the woods side of the road, which, as shown by the pictures, is almost directly opposite where the spur track crosses the road. Mrs. Guidry, plaintiff Rico’s mother-in-law, was standing on the sidewalk in front of her husband’s barbershop.
The plaintiff, Mr. Monteith and Mr. Bar-ras all testified that plaintiff was going at a very moderate irate of speed, with his car lights on. Barras said he did not see the locomotive until the car hit it. Mon-teith said he saw it when it was coming into the road. The car was then twenty-five or thirty feet from it. The plaintiff did not see the engine until his car was within ten or twelve feet of it. None of plaintiffs’ witnesses heard the locomotive’s bell ringing or the whistle blowing and none of them saw any light on the locomotive. Mr. and Mrs. Guidry did not know anything about the approaching of plaintiff’s car because they did not see it until the car and the locomotive collided. The forward end of the engine had reached about the middle of the road. All these witnesses said that after the impact the engine moved about ten feet, which pulled the front end of the car with it and when the engine stopped, the forward end was almost to the woods side of the pavement and the car came to rest at an angle across the road.
The members of the engine crew testified that the whistle was blowing, the bell ringing, and the backup light of the locomotive was shining. Five railroad employees were aboard. Two were on the platform and the engineer, fireman and one other were in the cabin located right at the forward end. The engineer, fireman and engine foreman said the locomotive came to a complete stop before entering the highway and seeing that the road was clear the engine was moved into the road. About that time plaintiff came into the road and traveled about one hundred fifty feet toward them at a moderate speed. The engineer said he watched the car and expected it to stop because the engine was going across plaintiff’s side of the road. When he saw the car was not stopping he threw on the emergency brake and stopped immediately with about half the road blocked. The other employees said the engine stopped and blew the whistle before entering the road and was moving across the river side (plaintiff’s right side) of the road with the bell ringing at from two to four miles an hour as plaintiff traveled about one hundred fifty feet from Destrehan Avenue where he entered Fourth Street.
The only obstruction to plaintiff’s view of the locomotive on the river side of the street was some telephone posts which in themselves did not cut off the view of the approaching engine, as shown by the pictures. Part of the engine was dark in color, and portions of it, including the whole back end, were striped in alternate wide orange and black diagonal conspicuous stripes. The backup light of the engine was said to be ten feet above the ground. The engine itself was about forty feet long. Even if the street light at the location was not of large candle power and the neon or advertising lights in front of the business houses did not illuminate the road at a great distance, the fact is that plaintiff not only had the benefit of the lights on his own automobile, the lights of the Barras’ car closely behind him must have added some light to the scene.
*200 Plaintiff’s contention- is that the operators of the locomotive should have provided adequate signals, a barricade, or at least a flagman at the scene to give unmistakable warning to automobile traffic. There is testimony to the effect that these devices and means of warning are not required at a railroad crossing of this type, this being a spur track at street level, not a main line, and used to service some nearby industries.
We do not find it necessary to analyze and appraise the requirements of the railroad in this situation, for the reason that we first shall consider whether or not the plaintiff was negligent under the plea of contributory negligence filed by defendant.
This plaintiff, Manuel Rico, said that he was within twelve or fifteen feet from the locomotive when he first saw it at which time the locomotive was on the edge of the road. That could not be a fact because the forward end of the engine was far enough into the road for the left front corner of the car to strike the near front corner of the engine. It is very definite that the locomotive was proceeding slowly. He heard no bell or whistle and saw no light on the locomotive. Mr. Rico had the very important and solemn duty to keep a proper lookout, inasmuch as Mr. Rico frankly admitted that he had been living in that locality for ten years and was familiar with the fact that the spur track crossed the road at this point and that it was used by the railroad. He admits he did not look except straight ahead. He could and should have seen the engine in time to stop his car.
There are many reliable authorities which discuss the rights and obligations of the respective parties at railroad-highway crossings. Reference to a few of the Court decisions on the subject will suffice to show that the railroad in this case now before us was not negligent:
“In action for damages resulting from railroad crossing accident, it is not alone sufficient for plaintiff to say that he did not see the approaching train not hear any noise, whistle or bell giving warning of the train’s approach.
* * * * * *
“Positive testimony of railroad’s witnesses that its employees gave proper warnings of approach of train at railroad crossing, and that the employees used all ordinary and reasonable care in operating the train which struck truck at railroad crossing, was not overcome by negative testimony qf witnesses for truck owner, that they did not hear train whistle blowing or bell ringing at time of train’s approach to the crossing, and hence evidence was insufficient to sustain allegation of negligence on part of railroad.” Powell v. Gary, 146 Fla. 334, 200 So. 854. (From syllabus.)
“The duty to * * * look, and listen before crossing a railroad must be performed at a time and place where * * * looking, and listening will be effective.” Young v. Louisiana Western R. R. Company, 153 La. 129, 95 So. 511. (From syllabus.) See also Lanier v. Missouri Pacific R. Co., 9 La.App. 586, 119 So. 710; Hutchinson v. Texas & N. O. R. Co., La.App., 33 So.2d 139; Brown v. Texas & Pacific Railway Co., 42 La.Ann. 350, 7 So. 682; Loftin v. Louisiana R. & Nav., 135 La. 33, 64 So. 972; Browne v. Texas & P. R. Co., La.App., 193 So. 511; Hartford Fire Ins. Co. v. Texas & N. O. R. Co., La.App., 70 So.2d 767.
“There are many cases which establish the jurisprudence to the effect that those in charge of railroad trains may presume that an individual or vehicle approaching a crossing will stop in time to avoid an accident, and the crew is justified in assuming that each car is going to stop and are, therefore, not required to bring the train to a' *201 stop or attempt to bring it to a stop unless there is reason to believe that the driver of the approaching car is oblivious of the on-coming train or for some other reason does not intend to stop. Wright v. Texas & N. O. R. Co., La.App., 19 So.2d 894; Bordenave v. Texas & N. O. R. Co., La.App., 46 So.2d 525; Levy v. New Orleans & N. E. Ry. Co., La.App., 20 So.2d 559; Calvert Fire Insurance Co. v. Texas & Pacific R. Co., La.App., 55 So.2d 693; Stelly v. Texas & N. O. R. Co., La.App., 49 So.2d 640; Bailes v. Texas & Pacific R. Co., La.App., 59 So.2d 509.” Leger v. Texas & P. R. Co., La.App., 67 So. 2d 775 (780).
Counsel for plaintiff relies on the case of Wyatt v. Public Belt Railroad Commission, La.App., 121 So.2d 298. In that case the railroad track ran parallel to the road and about eight feet from it. The track then curved into and crossed the road diagonally. The plaintiff in that case saw the headlight of the engine coming toward him on the track parallel to the road when he was one hundred feet away. When he was within a few feet of the crossing he suddenly realized that the engine was going into the roadway. He applied his brakes but there was no time to stop. The engine struck the car midway on the side. Plaintiff said that it appeared to him that the engine was traveling parallel to the road rather than entering it. The opinion does not say that the plaintiff was familiar with that location. This Court, in the Wyatt decision, cited Aaron v. Martin, La.App., 167 So. 106, as stating the applicable general rule, as follows:
“The general rule of law is that a railroad company is not required to station a flagman at a crossing to warn approaching motorists of the blocking of the crossing, nor to place lights or other signals at such crossing for that purpose in the ordinary and usual switching operations of such railroads, unless there are such unusual and dangerous conditions at such crossing as to make such precautions necessary. Plummer v. Gulf, M. & N. R. Co. et al. (La.App.) 153 So. 322; St. Louis-San Francisco R. Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 56 A.L.R. 1110.”
This Court in the Wyatt case found that the train crew on that occasion agreed that it had been the intention that the switchman place fuses in the roadway to warn approaching traffic but he did not do so. The Court found further that the engine appeared to be traveling parallel to the .road and the curve of the track toward the road was so gradual that the illusion that the engine was continuing parallel to the road was created. The Court concluded that at the crossing there was unusual or dangerous characteristics and the failure to place fuses to warn traffic was negligent. The Court also .remarked that the law imposing a duty on the plaintiff to avert peril is applicable and true only when plaintiff observed or could and should have observed the danger in time to avoid it, and that because of the peculiar circumstances existing no such opportunity was afforded plaintiff prior to the collision.
In the case at bar, additional to the charges of negligence on the part of defendant employees, it is argued that tall grass obstructed the view of plaintiff and prevented his seeing the locomotive. Photographs in the record, D-l, 2, 3, taken about 12:00 o’clock the next day after the accident show nothing to prevent plaintiff from seeing the locomotive if he had looked toward the tracks as he approached the crossing he could not have missed seeing the striped engine. The engine was in the .road ahead of the plaintiff. The engine was either stopped or moving very slowly in the road when the car struck it. Plaintiff’s speed was moderate and he could have had his car under full control at any moment. Whether or not the engine moved after the impact is of no importance. The crossing is not a dangerous trap unless an automobile driver closes his eyes when he approaches it. The facts in *202 the Wyatt case are entirely different from those in the case before us. The ruling in that case is no guide here, mainly because the movement of the engine gave reasonable evidence to Wyatt that it would continue parallel with the road, and there is no showing that Wyatt knew the track crossed the road at that point.
Judge Regan, as organ of this Court, composed the decision in the Wyatt case and his findings and conclusion are en-entirely consistent and in accordance with the peculiar circumstances there prevailing. The facts of no two cases are exactly the same. Counsel asks that we follow the Wyatt case because there is some similarity in the physical setup at the two locations. It would not make for a fair administration of justice to blindly apply the doctrine of stare decisis in tort cases. It would be much easier on the members of the judiciary merely to determine that facts and circumstances of a given controversy are substantially similar to those involved in a decided case, and then apply the conclusion reached in the former case as a r,ule of law. Obviously, this judicial technique would defeat the final cause of all law, — justice. In Ellis v. Travelers Ins. Co., La.App., 123 So.2d 780, 786, Judge Regan, of this Court, explained in succinct language why our Courts do not employ the application of an absolute rule of negligence in litigation involving human conduct. We quote from that Judge’s discussion, as follows:
“The civil law has always recognized that certain branches of the law call in conspicuous measures for certainty and order for an administration of justice that is strict and in a sense mechanical, such as inheritance or successions, definition of interest in property and the conveyance thereof, matters of commercial law, and transfers of obligations, etc.
“Other branches of law are better served where flexible standards, capable of being individualized to meet the needs of varying conditions, supersede the rigid rule with its mechanical application, such as torts and generally those branches of law that deal immediately with conduct.”
For these reasons the judgment appealed from is affirmed. Defendant to pay costs.
Judgment affirmed.
Supplemental Opinion
PER CURIAM.
In our original opinion, we concluded that the trial judge properly dismissed plaintiff’s suit, and accordingly affirmed the judgment of the lower court. However, in our decree, we inadvertently assessed costs against the defendant. Therefore, that part of our decree is hereby amended to read:
For these reasons, the judgment appealed from is affirmed. Plaintiff to pay costs.
Original decree amended, and reinstated as amended.