(38 South. 574.)

No. 15,507.

WHITE v. ILLINOIS CENT. R. CO.*

(April 24, 1905.)

RAILROADS—INJURY TO PERSON ON TRACK—TRESPASSERS.

1. To walk along the middle of a railroad track between crossings on a dark night without from time to time looking in both directions for trains upon the road, and without listening attentively for the noise of the moving cars and watching for the flashing of the headlights as well as for the sound of bell or whistle, is gross negligence.

2. Trespassers walking in the middle of a railroad track on a dark night, taking no precautions for their own safety, cannot throw upon the trainmen the entire duty of securing the same through unusual vigilance and extraordinary promptness and coolness. They are not permitted to disregard themselves all prudential measures, and exact them in an unusual degree from the railroad corporations.

(Syllabus by the Court.)

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; Robert Raymond Reid, Judge.

Action by James B. White against the Illinois Central Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed.

Hunter Collins Leake and Bolivar Edwards Kemp (J. M. Dickinson, of counsel), for appellant. Alfred Wood Spiller, for appellee.

Statement of the Case.

NICHOLLS, J. The plaintiff recovered judgment against the defendant for $2,000, with interest, as damages for the death of his son, Samuel White, whom he alleged was killed through the fault and negligence of the defendant company's agents.

We are of the opinion, under the evidence,

*Rehearing denied May 22, 1905.

that the judgment appealed from is erroneous, and should be set aside.

Plaintiff's · son and three other persons were, on the 14th of May, 1904, walking upon the defendant's right of way between 9 and 10 o'clock at night, he himself being in the center of the track, with another just in front of him, while the other two were walking upon a path close to the right-hand rail of the track, looking towards the north. The night was fair. The men walked on the right of way for over a mile without looking back. They were on their way from a little village called "Independence" to their home at "Akers Switch," a few miles north of that village. At the latter place a sawmill had been operated at one time, but it had been discontinued for a considerable time before the night in question. There seem to have been a few houses at that place, built for the use and accommodation of the employés at the mill, some of them being still occupied at the time of the accident which gave rise to this suit. Excursion trains stopped at the place, as did the local morning and afternoon trains, but the through trains did not. There was no depot at the place, and its name did not appear on the time tables which were provided for the use of the conductor and engineer on the through trains. At one time there was a whistling post south of Akers, but after the sawmill ceased to be operated it was no longer used. It does not appear to have been a whistling post called for by law, but one which had been placed where it was voluntarily by the defendant company. There was no public crossing at the mill. On the night of the accident a through train of the defendant, known as the "Cannon Ball," going north from New Orleans, struck and killed Samuel White, the plaintiff's son, and the young man just in front of him, who, like himself, was walking upon the track in front of it, going north. The locomotive was provided with a headlight, which

was burning brightly at the time, and the engineer and fireman were both at their posts, the former keeping a vigilant lookout. Just as the accident occurred a long freight train of the defendant company was going south on a parallel track.

### Opinion.

While there is conflicting testimony as to whether the whistle on the through train was blown or not at the whistling post and afterwards, we are satisfied that it was, though persons at Akers Switch and the men walking upon the track may not have heard this, or supposed that which was blown was that upon the freight train. We fail to see wherein the engineer was guilty of negligence. We think that he acted with promptness, and that he was at the time exercising care and attention in the discharge of his responsible duty. Plaintiff insists that he should have and could have seen the men on the right of way earlier than he did, and have taken more active measures than he did to secure their safety and guard them from the danger threatening them. We do not find as a fact that the engineer was remiss, but, assuming as a fact that by extraordinary promptness and coolness the injury to the men might have been averted by the blowing of a whistle at the very moment they were discovered, plaintiff's counsel overlook completely the fact that these men were trespassers upon defendant's track at a time when it could not have been reasonably anticipated that they would be there, but, if there, that it would be reasonably anticipated that they should and would be somewhat, at least, on guard for their own safety, and not attempt to throw exclusively upon the defendant and off from themselves the obligation of taking precautions for their own protection. In such a case there should be no nice balancing of the scales to determine as to the side upon which the duty of care and prudence should be cast. Even in the streets of a city, where there exists to a very considerable extent equality of rights and obligations between railroad companies and the public in regard to such matters as crossing railroad tracks, pedestrians are not permitted to disregard themselves all prudential measures, and exact them in an unusual degree from the railroad corporations.

We quote as being very pertinent to this case the language of Chief Justice Bleckley in Central R. & Bkg. Co. v. Smith (Georgia):

"It would be flagrantly unreasonable and improbable to presume that he or any one else had the shadow of a right to use the track, especially at such an hour, or any other condition. The train was on its regular schedule time. He quietly walked along upon the track as if it belonged to him. The train struck him, knocked him down, and broke his leg; those on the engine not seeing him or being aware of his presence. It was at least as much his business to look out for the engine as it was the engineer's business to look for him. The engine was a much larger object than he was. It carried a headlight, and could have been seen as far as he could. It was not possible for the engineer to have discovered him on the track sooner than he could have seen the headlight. The presence of the engine was more to be expected by him than his presence was to be expected by the engineer. He had much less reason to be surprised than the engineer had. As a matter of fact, to walk along the middle of a railroad track, between crossings, when it is dark, and without knowing and remembering whether a train is due or not, and without looking out in both directions for trains that may be due, and without listening attentively and anxiously for the roar and rattle of machinery, as well as for the sound of bell or whistle, is gross negligence." 3 S. E. 398.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that plaintiff's demand be rejected at his costs in both courts.

MONROE, J. I concur in the decree.