A judgment not responsive to the pleadings and not covering the case will be set aside on appeal.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 434; Dec. Dig. ☞248.]

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Suit by Bertrand C. Francingues against Isabelle Dupierris. From a judgment for defendant, plaintiff appeals. Judgment set aside, and case remanded.

Felix J. Puig and Emile Pomes, both of New Orleans, for appellant. A. J. Rossi, of New Orleans, for appellee.

PROVOSTY, J. This is a suit for a partition of the property depending upon the community of acquêts and gains at one time existing between the parties.

The judgment decrees the wife to be owner of a certain described lot, and also of a note, which note, by the way, was one executed by herself. It is not responsive to the pleadings, and does not cover the case.

The judgment appealed from is set aside, and the case is remanded to be proceeded with according to law; the costs of this appeal to await the final disposition of the case.

---

(71 South. 503)

No. 20716.

## LADNER v. NEW ORLEANS TERMINAL CO.

(March 20, 1916. Rehearing Denied April 24, 1916.)

*(Syllabus by the Court.)*

RAILROADS ☞327(1) — OPERATION — ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE.

It is the duty of one crossing over railroad tracks in a city to look and to listen so as to avoid accidents; and, if he fails to look and listen, and to see and hear danger signals, he is negligent, and he cannot recover damages for injuries suffered by him.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1043, 1045; Dec. Dig. ☞327(1).]

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Homogene Ladner against the New Orleans Terminal Company. From a judgment for plaintiff, defendant appeals. Reversed, with directions to dismiss suit.

Hall, Monroe & Lemann, Dufour & Dufour, and R. Bland Logan, all of New Orleans (George Janvier, of New Orleans, of counsel), for appellant. George J. Untereiner, of New Orleans, for appellee.

SOMMERVILLE, J. Plaintiff asks for judgment in the sum of $10,000 against defendant for damages suffered by him through the alleged fault and neglect of the latter.

Plaintiff alleges that on December 6, 1911, at 5:45 o'clock in the afternoon, while on his way home from work, and while crossing the intersection of Toulouse street and Claiborne avenue, in the city of New Orleans, leading to a bridge over the Carondelet Canal at that place, he was run into and knocked

down by a freight car of the defendant company, which was being operated over the tracks in Toulouse street, and which was being driven backwards by a steam locomotive; that his skull was fractured; that his jaw and six ribs on the left side of his body were also fractured; that he was wounded about the neck, face, and shoulders, and was severely shocked; further, that the injuries to him were without fault on his part, and that they were due solely to the fault and negligence of the defendant, its agents and employés, and that that negligence consisted in failing to have a flagman in the tower of defendant at the intersection aforesaid; that the gates erected at said intersection for the protection of pedestrians, under the terms of a municipal ordinance, were raised, thereby announcing to petitioner and others crossing over the said intersection that it was safe to pass over; that the defendant company had parked its cars near the intersection so as to screen and hide any locomotive or cars from his view that might be running on the track at the time of the accident; that defendant drove its car through the streets of the city backwards, with no one on the front end thereof to warn pedestrians of its approach, and without sounding its bells to warn persons crossing at the intersection.

Defendant answered, denying all liability, and that, if any injury was suffered by plaintiff, it was caused solely and entirely by gross carelessness on his part, and that plaintiff contributed to the accident by his negligence.

There was judgment in favor of plaintiff in the sum of $800, and defendant has appealed. Plaintiff has answered the appeal, and has asked for an increase in the amount of the judgment.

The evidence shows that the plaintiff was very seriously injured; but it does not show that he suffered a fracture of the skull. The evidence further shows that plaintiff was not knocked down by a freight car, but by a switch engine; that there was a flagman in the tower at the intersection named, who lowered the gates on the signal given from the approaching engine. The engine was being driven backwards, but the evidence shows that it was well lighted in the front and in the rear, and the bell was being constantly sounded.

There were four persons in the party with plaintiff, laughing and talking, as they walked home from their daily employment in a factory a short distance from the scene of the accident. Plaintiff was the only one of the four who was injured. His three companions appeared as witnesses for him, and they severally testified as to the ringing of the bell on the locomotive, that it was not coming too fast, and that the light on it was seen by them. One of them testified that he warned plaintiff, saying, "You can't make it," but that the plaintiff "stooped down, and that is the time he must have got hit by the train." He further testifies that plaintiff stooped for the purpose of getting under the gates, which were descending at that time.

Plaintiff testifies that it was dark, and that the rain was falling on the afternoon of the accident, and that he did not see the approaching engine, or the lights thereon, or hear the ringing of the bell. He further testified that the gates at the end of the Claiborne bridge over the Carondelet Canal were raised. In this he is contradicted by the watchman in the tower, in the employ of the defendant company, who testified that he had received a warning from the approaching engine, and that the gates were lowered in response thereto, while the engine was about two squares distant. In this the witness is corroborated by the motorneer of a street car who was detained on the bridge by the closed gates. The preponderance of the evidence shows that the gates were closed at the time of the passing of the

locomotive and of the injury to plaintiff; and it would appear that plaintiff was running in a stooping position to get under the lowered gates, and away from the approaching engine.

Plaintiff appeared to think that because of the failure of the defendant company to lower the gates, and he testified that it failed to lower them in this instance, he was relieved of all responsibility to look and listen while crossing the tracks of the defendant company. In this he was mistaken. He should have looked and listened while crossing a street in which cars are being operated in a city.

He testified to the arrangement of the tracks in the locality mentioned. They were divided into two groups. Five were in the first group near St. Louis street, and six were in the second group, at Toulouse street, near the Carondelet Canal, with a space intervening of 132 feet between the two groups. The engine which injured plaintiff was on the outbound main track, which was closest to Toulouse street, and within about 7 feet of the gates, which were intended to warn pedestrians and others of approaching engines. Plaintiff had passed over the first group of tracks, nearest St. Louis street, and had crossed all of the second group with the exception of the last track. He says that he was laughing and talking with his companions, and that there were box cars on some of the side tracks to his right which obscured from his view the oncoming engine.

In answer to questions on cross-examination he answered:

"After you got past these box cars on the tracks did you look to the right to see if there was anything coming along? A. No, sir; I didn't have to look to the right, because the signal was up. Q. So you just walked right straight across without looking; is that it? A. Yes, sir; because when you come to the bridge, of course, you naturally look for the signals, and, if they are down, then you know that there is danger, but, when they are not down, you just go right on and you don't have to watch out. Q. When you come there and see that the gates are up, you just walk right across, do you? A. Yes, sir; of course. Q. And you don't look to the right or left to see if there is anything coming along the track? A. I don't have to do it. Q. You don't have to stop and listen to see if anything is coming along? A. No, sir; of course, you don't, because after you get the signal to come across you are just going across. Q. After you do what? A. I say, when you get a signal to go across, of course, naturally you go right across. Q. Well, did you get a signal to come across that track? A. Yes, sir; surely I did; the signal was up. Q. You mean the gates were up; nobody waived to you to come across the track, did they? A. No, sir; but I was going home. Q. And the gates were up when you got down there? A. Yes, sir. Q. And you went right on across without looking or listening or anything of that kind? A. Yes, sir; because that was my business; I didn't have to look to see if anything was coming, any train or anything like that. * * * Q. Now, Mr. Ladner, if you had stopped, or if you had looked when you passed that car, to the right, you could have seen that engine coming, couldn't you? A. I might have seen it coming if I had looked; yes, sir. Q. You could have seen it if you had looked? A. Yes, sir; but it wasn't my business to look, because the bridge was clear, and that is why I went across. Q. So you didn't look at all, but just kept right on, because, as you say, the way was clear or appeared to be clear? A. Yes, sir; of course, when the bars are down at night, there is a red light on it to show people, and I wouldn't have crossed. Q. But, not seeing it down, you just kept right across, without looking or listening or anything like that? A. Yes, sir."

Plaintiff saw that he was crossing railroad tracks; he was in the habit of going and coming over them every day; he knew there was danger from passing locomotives; and he must have received some warning of the approaching engine, for he assumed a stooping position to get under the gates.

It was the duty of the defendant company to lower the gates at the intersection at the end of the bridge over the canal, and this duty was performed by the defendant, although plaintiff testifies that he failed to see the signal, which was a burning lantern hung at one end of the gates.

Plaintiff failed to use that diligence which a reasonably prudent person should use, and which his three companions did use, in crossing the tracks, and avoid the locomotive which injured him, and he was negligent in

failing to do so. This negligence was the cause of the accident to him; while the caution used by his companions prevented the same accident happening to them. No fault or negligence has been proved on the part of the defendant company or its agents or employés. It (the engine) was being driven with care and caution. Plaintiff contributed to the accident which befell him.

Only questions of fact are presented in this case, and it is usual for the court to affirm the verdict of the jury, and the judgment of the trial court, in such cases; but, when plaintiff testifies to his own fault and neglect, and that fault and neglect is shown clearly to be the cause of the injuries complained of by him, and no fault is shown on the part of defendant, he cannot recover damages.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and it is now ordered that plaintiff's suit be dismissed at his cost.