No. 2745

Second Circuit

SIMPKINS, ET AL., v. LOUISIANA RAILROAD & NAVIGATION CO.

(Dec. 11, 1926.  Opinion and Decree.)
(Jan. 28, 1927.  Rehearing Refused.)

(*Syllabus by the Editor.*)

1. Louisiana Digest—Railroads—Par. 62, 67, 80; Negligence—Par. 42.

The evidence of the trainmen as to whether signals where given just previous to a collision with an automobile being more credible, will outweigh that of people living in the town, who had no special reason to observe whether the signals were given.

2. Louisiana Digest—Railroads—Par. 58, 62, 81.

It being shown that the signals were properly given by the trainmen and that they used every precaution before crossing the highway at which collision with an automobile happened, there was no negligence of the railroad, and there can be no recovery for damages against the railroad company.

Appeal from the Tenth Judicial District Court of Louisiana, Parish of Natchitoches. Hon. John F. Stephens, Judge.

Action by W. D. Simpkins, et al., against Louisiana Railway and Navigation Company.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Breazeale & Breazeale, of Natchitoches, attorneys for plaintiffs, appellants.

Rusca & Cunningham, of Natchitoches; Wise, Randolph, Rendall & Freyet, of Shreveport, attorneys for defendant, appellee.

WEBB, J.  The plaintiffs, W. D. Simpkins and Mrs. Ethel Simpkins Swartz, children of Mrs. Alice Marie Simpkins, appeal from a judgment rejecting their demands in an action brought by them against the Louisiana Railway & Navigation Company to recover damages for the death of their mother which they alleged was caused by the negligence of defendant's employees who were in charge of a train being operated over defendant's line.

Mrs. Simpkins, on the afternoon of November 4, 1925, was a guest of Mrs. Clara Scopini in an automobile driven by the latter; and at about 3 o'clock, Mrs. Scopini, while driving along one of the streets in the town of Campti, which leads over the railroad track of defendant, drove the car upon the track in front of an approaching train, where the car stopped and where it was struck by the train and demolished and Mrs. Scopini and Mrs. Simpkins were killed.

On approaching the track, Mrs. Scopini stopped the car at the stop sign, which was about fifty feet from the crossing (from which point to the track there is an unobstructed view of the track to the north, the direction from which the train was approaching, for several hundred yards), and thence Mrs. Scopini drove the car towards and upon the track where it stalled and the distance between the train and the car at that time was so short that the collision was inevitable.

The plaintiffs charged the defendants and its employees with many acts of negligence, but only one is pressed here, which is that the signals were not given for the

crossing; it being urged that Mrs. Simpkins, being a guest of Mrs. Scopini, whatever may have been the negligence of Mrs. Scopini in going upon the track in front of the approaching train, such negligence cannot be imputed to her guest, and that the evidence not showing that Mrs. Simpkins saw the approaching train, the plea of contributory negligence (set up by defendant in the alternative) has no application and plaintiffs should recover.

The plaintiffs concede that the legal question does not arise unless the evidence establishes that the signals were not given, and they strenuously urge that the preponderance of the evidence shows that the signals were not given.

The train which killed Mrs. Simpkins was a special freight, its speed after arriving in the town of Campti was about ten miles per hour, and before reaching the crossing where the collision occurred it had passed a crossing referred to by the witnesses as the "Frost-Johnson Lumber Company crossing", and three crossings similar to the accident crossing, the latter crossings, including the accident crossing, being about four hundred feet apart; and the custom had been to give the signals for the station (which is about seven hundred and fifty feet south of the accident crossing) at the Frost-Johnson crossing and the signals for the street crossings at a distance of about two hundred feet.

The fact as to whether or not the signals were given for the accident crossing is very difficult to prove, other than by persons who saw the train at that place and were in position to have heard the signals; and the only persons who were called and who appear to have been in such position as to have been able to testify positively on the question, were the trainmen, engineer, fireman and a brakeman who were on the locomotive and the conductor and two brakemen who were on the rear of the train, and Mr. Pinckard who was standing near the depot, which is about seven hundred and fifty feet from the crossing where the accident occurred.

The trainmen testify that the signals were given, while Mr. Pinckard testified that the whistle was not sounded and that he did not hear the bell. It appears, however, that Mr. Pinckard was slightly deaf and that his vision was impaired; and it is very easy to reconcile his testimony with that of the trainmen.

The other witnesses who were called were persons who were in the vicinity at the time of the accident, and none of them claimed to have seen the train after it passed the Frost-Johnson crossing until after the accident occurred, except Clabe Suline, who stated that he saw it before it had reached the first crossing above the accident crossing, and that the signal was not sounded for that crossing; the others stating that they had not heard the signals for the street crossings, but had heard the signal whistles for the Frost-Johnson crossing, and after the accident had occurred, with the exception of one of these witnesses, none of them had seen the train when it was at the Frost-Johnson crossing, nor had any of them been present when the signals were given after the accident.

All of the witnesses appear to have been engaged in some work, or bent upon some errand at the time the signals should have been given, except two, one of whom states that he was, at the time, suffering from pain, and it is not shown that there was any especial reason why they would have noted the signals, if heard, as it does not appear that their occupation was in any manner connected with the signals.

The weight to be given to the testimony of the trainmen is dependent entirely upon their individual credibility, while that to be given to the testimony of plaintiffs' witnesses, conceding that all are credible, is dependent upon the conditions which existed in the town of Campti as to whether or not the signals given by trains is such an occurrence as would be noted, and from our review of the record, we reach the conclusion that considering the tendency of the affairs which the witnesses had in hand to divert their attention from such occurrences, and considering that it is shown to be the usual custom of trains coming into and passing out of the town of Campti to signal for this crossing, and that plaintiffs' witnesses, with the exceptions noted, were occupied with other things which attracted their attention, we find that their evidence cannot be said to outweigh that of the trainmen.

Finding that the evidence does not show that the signal for the crossing was not given, it is not necessary to consider whether or not Mrs. Simpkins was guilty of negligence.

The judgment is affirmed.