SEELHORST ET AL. v. PONTCHARTRAIN R. R. CO.

(July 1, 1929. Opinion and Decree.)
(October 21, 1929. Rehearing Refused.)
(December 2, 1929. Writ of Certiorari and Review Refused by Supreme Court.)

H. W. Robinson, of New Orleans, attorney for plaintiffs, appellants.

Denegre, Leovy & Chaffe, and N. P. Phillips, of New Orleans, attorneys for defendant, appellee.

HIGGINS, J. Mrs. E. L. Seelhorst, a woman 68 years of age, was killed about mid-day of July 1, 1926, at the intersection of Elysian Fields Avenue and Derbigny Street, in this city, by a train operated by the defendant railroad company. Plaintiffs, the sons and daughters of the deceased, bring this action in damages claiming $30,000.

The charges of negligence in the petition are that the bell on the engine was not rung; that the crossing signal at Derbigny Street was out of order and the bell attached to it not ringing; that the train was being operated with the engine reversed; that the fireman was coaling his engine at the time the accident happened and no lookout was maintained on the side of the engine nearest Mrs. Seelhorst.

Defendant denied all charges of negligence and averred that the train was being carefully operated; that due warning was given of its approach "to the public in general and to Mrs. E. L. Seelhorst in particular not only by the wigwag bell at the crossing, but by the bell on the locomotive, both of which were in order and ringing loudly and audibly; and apart from these signals, Mrs. Seelhorst could not have avoided seeing and hearing the train (there being nothing to prevent her doing so) had she used her ordinary senses."

The case was tried by a jury and a verdict and judgment rendered dismissing plaintiffs' demand. Plaintiffs have appealed.

The street crossing where the accident occurred is in a very populous section of the city. Elysian Fields Avenue is very wide, being 150 feet 6 inches from curb to curb. Of this 150 feet 6 inches, 52 feet thereof is occupied by railroad tracks and an additional 48 feet by the railroad right of way. There are two board walks for the use of pedestrians. There are two warning signals, one at each side of the crossing. These signals consist of a light, a bell and a moving arm called a wigwag.

The train of defendant railroad company was being operated on one of the five tracks, with the coal tender in front of the engine, at a speed of fifteen or twenty miles per hour according to some witnesses, and, according to the engineer, six or eight miles per hour. It was pro-

ceeding in the direction of the lake from the river on the track nearest Canal Street, which was the fifth track and the one farthest away from Mrs. Seelhorst. Mrs. Seelhorst was crossing on the lake side of Derbigny Street from the lower side of Elysian Fields Avenue to the upper, or Canal Street side, on one of the two board walks which traversed the tracks at right angles. She was returning to her residence from a corner grocery on the opposite side of the avenue, where she made a few purchases. She had crossed four of the five tracks and was struck by the train while in the act of crossing the fifth.

The train consisted of a coal tender, which had a cow catcher attached to the front part of it, the engine and two passenger coaches. It was in charge of an engineer and a fireman, who were in the cab of the engine and a conductor and flagman, who were in the coaches. The train had stopped at Claiborne Street, one square from the scene of the accident, for the purpose of receiving and discharging passengers.

The engine was backing with the engineer seated on the left hand side of the cab in a position where he could not see to his right or the direction from which Mrs. Seelhorst approached the tracks. The fireman, who usually occupied the seat on the right hand side of the engine, or the side nearest Mrs. Seelhorst, was engaged in shoveling coal in the firebox of the engine. Neither the engineer nor the fireman saw her at any time before the accident.

The engineer testified that immediately upon striking her, he applied the emergency brake and succeeded in stopping the train after it had proceeded about 150 feet. Mrs. Seelhorst's body was thrown from the track to the left hand or Canal Street side of the fifth track on to the right of way of the company, she evidently having almost succeeded in crossing the last track.

There is considerable conflict in the testimony as to whether the bell on the engine, or the warning signal at the crossing known as the wigwag signal, was ringing, but we are convinced that the testimony preponderates in favor of plaintiffs, and we find, therefore that the bell on the engine was not ringing and that the signal at the crossing was not in operation. There was no lookout on the tender, which was in front of the engine, or elsewhere, in a position to see Mrs. Seelhorst and she was not seen by any member of the train crew. As a matter of fact, there is no serious contention concerning defendant's negligence. The alleged contributory negligence of the deceased is relied upon as preventing recovery.

The burden of proving contributory negligence rests upon defendant. Nash vs. La. Railway & Nav. Co., 153 La. 412, 96 So. 14; Blanchard vs. Gulf, Colo. & Santa Fe R. R. Co., 1 La. App. 169.

The argument is that the negligence of a railroad company is of no consequence, for the reason that deceased, being in full possession of her faculties, should have made certain that the way was clear before crossing the tracks; that she either saw or should have seen the train, and in either event her negligence was the proximate cause of the accident. In other words, she walked into the train and must, therefore, suffer the consequences of her carelessness and reckless conduct. This argument if pursued to its logical con-

clusion, would make it practically impossible to fasten liability upon a railroad company for street crossing accidents, no matter what precautions essential for the safety of the public it may have failed to observe. It is unsound. As was said in Lampkin vs. McCormick, 105 La. 418, 29 So. 952, and quoted with approval in Draiss vs. Payne, 158 La. 658, 104 So. 489.

"Railroad corporations backing their trains through danger points in the streets of a city must use proper care and take proper precautions to safeguard citizens upon them. If they entirely fail to do this, they assume the risk of injury to individuals, even if the injury received be done (due) to some extent to the latter's imprudence or forgetfulness. They cannot fail entirely in their duty, and argue that, had the duty been performed, it would have been in the particular case, unavailing. The results should have been put to the test by actual trial made at the time."

There was no flagman at this crossing, a circumstance which enhanced the danger and increased the necessity for care on the part of the employees in charge of the defendant's train. Lampkin vs. McCormick (supra). There should have been a fireman in the window opposite the engineer. "There must be an engineer at the engine, who has charge of the window on the right, a fireman on the left, a lookout at the end of the train on occasions such as this was, and there should be a flagman at the crossing when required. If there is no flagman, then there is necessity for greater precaution on the part of the other servants of the company. The absence of the flagman greatly enhanced the danger." (Ibid.)

In Draiss vs. Payne, supra, the court said:

"Those in charge of the train, under such circumstances (the circumstances which obtained in that case) are the first aware of its approach and of the proximity of the danger, unknown to persons and vehicles at or near the crossing in a city. They are therefore in a better position than anyone else to avoid accidents by the use of ordinary care."

The engineer testified that the presence of the tender in front of the engine obscured his view of objects to the right of the tracks nearer to him than 150 feet, but beyond that distance he could see very clearly. The train stopped at the corner of Claiborne and Elysian Fields Avenue, which is one city block or approximately 300 feet from the scene of the accident. If the engineer had been looking, he must have seen the deceased on the crossing, for, according to his own statement, he could have seen her until she was within 150 feet of the engine. It would have been a very easy matter for him to have given a short shrill whistle, or to have rung the bell, or to have slackened the speed of his train in order to prevent the accident. Of course, if the fireman had been on lookout on the other side of the cab he could have seen deceased continuously and without interruption up to the time she was struck and could have caused some warning to be given. As was said in the case of Betz & Son vs. Illinois Central R. R. Co., 161 La. 931, 109 So. 767, a case involving damage to an automobile at a crossing where there were four tracks covering a space of 35 feet (in this case there were five tracks covering about 52 feet):

"The trial judge found, and the evidence supports the finding, that the engineer could have seen the hearse approaching the crossing, and about to cross the track, at a distance of about 250 feet, and had ample time and opportunity of blowing his whistle and to have stopped his engine and avoided the collision.

"The engineer did not blow his whistle, there was no lookout on the tender, and the brakes were not applied until the engine was within 15 feet of the hearse."

In the cited case, the contention that it made here, to the effect that the plaintiff should have stopped, looked and listened, is answered by the court quoting the syllabus in Cherry vs. La. & A. R. Co., 121 La. 476, 46 So. 596, 17 L.R.A. (N. S.) 505, 126 Am. St. Rep. 323, to the effect that:

"Where the distance across four railroad tracks is only 49 feet (here it is 35 feet) — (in the case at bar there are five tracks covering about 52 feet) — a traveler about to cross the tracks exercises all due legal care and prudence if he stops and looks and listens before venturing upon the first track. He is not required to repeat the precaution with each of the tracks in succession."

Mrs. Seelhorst stopped at the first track, but since the signals placed there for the purpose of warning pedestrians were not working, she had a right to assume that there was no danger in making the crossing. The failure of the warning signals to operate was an invitation to her to cross the tracks.

In Maher vs. La. Ry. & Nav. Co., 145 La. 736, 82 So. 873, the court, referring to the plaintiff in the case, said:

"The argument that plaintiff was guilty of contributory negligence is based upon the fact that he could and would have crossed the track in safety if he had walked faster, or had started as soon as the train had cleared the track, going north. In other words, he stopped, looked and listened too long. But he did it in good faith and under circumstances in which we think any man of ordinary prudence might have made the same mistake. He had a right to believe, and to act upon the belief, that the railroad company and its train crew would have some regard for the safety of the public."

It will be remembered that the train in this case was backing, and even if it had been seen by deceased after having ventured across the first part of the crossing, she would not necessarily conclude that the train intended to continue on its course across her path, for it might well have been that the train was engaged in a switching movement, which would not take it to the crossing. A map and a photograph of the locus in quo, introduced in evidence by the defendant, shows the presence of a switching track in that very block. Since the train was backing slowly and no whistle blown and no bells ringing, she may very well have believed (assuming that she saw the train) that it was engaged in a switching movement.

The failure of the "wigwag" to operate would have a tendency to confirm her in this view. In any event, even though it be conceded that she was negligent in crossing the tracks, and if we consider her as a trespasser, which is a most unfavorable view and one not warranted by the facts, the defendant was under obligation not to wantonly injure her. The omission of all precaution by the operatives of the defendant's train in approaching a dangerous crossing where there are five tracks, used by trains moving in both directions, is equivalent to wantonness.

Counsel press upon our attention the fact developed by the record that the engine used by this train was the second oldest in the United States, and the coaches almost as old, having been taken out of service of the main line of defendant railroad because of their failure to meet the requirements of the Federal Safety Appliance Act. We do not consider this circumstance of any importance, be-

591

cause if the engine had been a new one and the equipment most modern, it would have made no difference, if the train had been operated in the manner that this old train was operated.

The essential facts in the Betz case (supra) are strikingly similar to the facts here. In that case the accident occurred at a street crossing, where there were four parallel tracks. The hearse, which was damaged, had crossed all but the last track in plain view of the engineer, no whistle was blown and no bells were ringing. In that case the brakes were applied when the engine was within fifteen feet of the hearse. In this case the brakes were applied after deceased was struck.

In Smith vs. Illinois Central R. R., 10 La. App. 342, 120 So. 405, this Court held that the plaintiff in that case, which involved an accident at a crossing, could not recover, but we found that the facts in the Smith case were quite different from those in the Betz case, because in that case the engineer did not have the last clear chance of avoiding the accident for the reason that "the vehicle dashed out from its position of obscurity immediately in front of the locomotive. The engineer not only did not have the last clear chance, but had no chance at all." Here under the rule announced in Belle Alliance Co. vs. Texas & Pac. Ry. Co., 125 La. 778, 57 Sou. 846, and quoted in the Betz case, the last clear chance was with the defendant. The doctrine is thus stated in that case:

"The last clear chance doctrine, as applied to railway crossing accidents, is that if, after the engineer has seen the danger of the person on or near the track, he can stop his engine and avert the accident, and fails to do so, the person injured can recover in spite of his own negligence."

Our conclusion is that defendant is liable and plaintiffs should recover.

The record shows that the deceased was 68 years of age and in good health. She was a kind and loving mother, living happily with some of her children in the old family residence in this city. The children are majors and were not dependent upon her for support, but have been deprived of her association and companionship. The deceased suffered excruciating pains as a result of her fatal injuries and was conscious from immediately after the accident and until a short while before her death at Charity Hospital on the same day, about 4:30 o'clock in the afternoon. Under the circumstances we feel that the sum of $6,000 should be awarded plaintiffs.

It is ordered, adjudged and decreed that the judgment of the lower court be annulled, avoided and set aside, and that there be judgment herein in favor of William G. E. Seelhorst, Jr., Mrs. Mary Seelhorst Braig, Mrs. Sophie Seelhorst Maitre, Andrew D. Seelhorst and Edward E. Seelhorst, plaintiffs herein, and against defendant Pontchartrain Railroad Company, in the full sum of $6,000 with legal interest from judicial demand until paid. Defendant and appellee to pay all costs of court.

JANVIER, J., dissenting. I can see in this case nothing to distinguish it from the innumerable others which have established firmly the doctrine that a pedestrian who is struck by a train is guilty of such negligence as to bar recovery, if, by the due use of either the sense of sight or the sense of hearing, the approach of the train could have been discovered.

In such cases no purpose can be served by investigating and discussing the negligence vel non of the operatives of the train. Failure of the pedestrian to use his senses of sight and hearing are insurmountable obstacles in the path of plaintiff, without any reference to the negligence of the train crew.

"No failure on the part of the railroad company to do its duty will excuse anyone from using the senses of sight and hearing, upon approaching a railway crossing, and whenever the due use of either sense would have enabled the injured person to escape the danger, the injury is conclusive evidence of negligence, without any reference to the railroad's failure to perform its duty."

Tucker vs. I. C. R. R. Co., 141 La. 1102, 76 So. 213.

Brown vs. R. R. Co., 42 La. Ann. 355, 7 So. 684, 21 Am. St. Rep. 374.

Tatum vs. Rock Island R. Co., 124 La. 927, 50 So. 796.

Herlisch vs. R. R. Co., 44 La. Ann. 280, 10 So. 628.

Provost vs. Y. & M. V. R. Co., 52 La. An. 1894, 28 So. 305.

"The mere omission of train signals will not subject the railroad company to damages if the traveller struck by the locomotive attempts to cross the track without observing usual precautions to avoid such accidents."

Brown vs. T. & P. Ry. Co. (supra).

Britton & Koontz vs. Harvey, 47 La. Ann. 259, 16 So. 747.

Loften vs. L. R. & N. Ry. Co., 135 La. 33, 64 So. 972.

"It is the duty of one crossing over railroad tracks in a city, to look and to listen so as to avoid accidents; and, if he fails to look and listen, and to see and hear danger signals, he is negligent and he cannot recover damages for injuries suffered by him."

In the above case the plaintiff was crossing the intersection of Toulouse Street and Claiborne Avenue and was run into and knocked down by a freight car, operated over the tracks in Toulouse Street, driven backwards by a steam locomotive.

I do not find it necessary to disagree with my associates as to the facts of this case, although if it were necessary to a decision to disagree on the facts, I would respectfully direct attention to the unanimous jury verdict in favor of defendant, and would suggest that the rarity of such a verdict in a damage suit against a railroad is a stronger argument in favor of their correctness than could be couched in any words of mine.

Assuming that the crew was not looking out for pedestrians; that no whistle was blown and no bell was rung and that the crossing bell was not ringing (though, in view of the verdict, all these are rather violent assumptions), a recovery is not justified under the jurisprudence of this State. The view of Mrs. Seelhorst was unobstructed, the day was clear and deceased, through her twenty-nine years' residence on Elysian Fields Avenue in the immediate vicinity of the crossing in question, was thoroughly familiar with the locality and with the fact that trains were constantly run on all the tracks over which her path crossed.

The law applicable to such a situation is well stated in Nolan vs. Illinois Central R. R. Co., 145 La. 483, 82 So. 590:

"A person about to walk upon a railroad track must look and listen for approaching trains; and where he fails to do so, and walks upon the track in such close proximity to an approaching train as to be struck by it before it can be stopped, he is guilty of such negligence as will preclude a recovery in damages for his death; and the fact that the train was negligently

operated will not render the company liable. White vs. Railroad Co., 114 La. 825, 38 So. 574; Riley vs. Shreveport Traction Co., 114 La. 135, 38 So. 83; Lewis vs. Railroad Co., 114 La. 161, 38 So. 92, 108 Am. St. Rep. 335; Jones vs. Railroad Co., 121 La. 39, 46 So. 61; May vs. Railroad Co., 123 La. 647, 49 So. 272; Dubose vs. Railway Light Co., 123 La. 1029, 49 So. 696; Tatum vs. Rock Island Railroad Co., 124 La. 921, 50 So. 796; Harrison vs. Railroad Co., 132 La. 767, 61 So. 784; Elliott (2d Ed.) p. 1171."

See, also, Gibbens vs. N. O. Terminal Co., et al., 159 La. 347, 105 So. 367; Tucker vs. Ill. Central Railroad Co., supra, and the following decisions of the Courts of Appeal:

Morin, etc., vs. Central R. R. Co., 1 La. App. 72.

Guillot vs. La. Ry. & Nav. Co., 3 La. App. 541.

Simkins et al. vs. La. Ry. & Nav. Co., 5 La. App. 438.

Sullivan vs. Tremont & Gulf Ry. Co., 4 La. App. 358.

Trainmen have a right to believe that a person approaching a railroad track will exercise their sense of sight and hearing, so as to perceive an approaching train in time to avoid an accident. Schulte vs. N. O. City & Lake Rd., 44 La. Ann. 511, 10 So. 811; Cook vs. L. & N. W. R. Co., 130 La. 918, 58 So. 767; Nelson vs. T. & P. Ry. Co., 140 La. 676, 73 So. 769.

The case of Betz & Son vs. Ill. Cent. R. R. Co., 161 La. 931, 109 So. 766, can, in my judgment, afford no comfort to plaintiffs, merely by reason of the fact that there as here, there were several tracks to be crossed. In the first place, in the Betz case the object struck was a vehicle, which, of course, is not so easily nor instantaneously controlled as is a pedestrian. In the second place the vehicle was crossing the tracks not at right angles as was Mrs. Seelhorst, but at an angle of about forty-five degrees, so that the train was approaching to some extent from the rear of the vehicle. But, most important of all, in the Betz case the court found that it should have been apparent to the engineer that the driver of the vehicle was oblivious of the danger approaching partially from the rear, and that therefore, had the engineer been looking, he would have had an opportunity to avoid the accident, even after it was no longer possible for the driver of the vehicle to do so. In other words, the engineer had the last clear chance.

The doctrine of the last clear chance, however, can have no application to a case of a pedestrian, in the full possession of his faculties, because his negligence in stepping upon the track and in remaining there continues up to the very moment of the accident and prevents the application of the doctrine of the last clear chance.

Harrison vs. Railroad Co., supra.

Castile vs. O'Keefe, 138 La. 479, 70 So. 481.

Morin vs. I. C. R. R. Co., supra.

Leopold vs. T. & P. Ry. Co., 144 La. 1000, 81 So. 602.

Tucker vs. I. C. R. R. Co., supra.

Hammers vs. C. S. N. O. & P. R. Co., 128 La. 648, 55 So. 4, 34 L.R.A. (N.S.) 685.

Nor can I agree that Cherry vs. La. & Ark. Ry. Co., 121 La. 471, 46 So. 596, 17 L.R.A. (N.S.) 505, 126 Am. St. Rep. 323, is in point here. There is not the slightest doubt that the crossing here was in no

way obstructed and that any care on the part of Mrs. Seelhorst would have brought to her notice the approaching train. In this regard the facts are entirely different from those in the Cherry case, in which the court said that "the crossing was one of the most frequented of the town and was obstructed by cars standing upon and near it." It appears that the engineer in the Cherry case admitted the charges of negligence, but sought to excuse himself by stating that "he did not know the car stood so near the crossing, or, in other words, that the crossing was so obstructed or so dangerous."

Furthermore, in the Cherry case the persons killed were riding in a vehicle, and were not, as was Mrs. Seelhorst, walking.

In order to avoid the impression which may be erroneously obtained from a reading of the majority opinion, let me state that the train involved was not being driven backwards. That is to say, the cars were not ahead of the locomotive. The only charge of negligence in this regard is that the locomotive was operating with the tender end first. It has been many times held that such movement does not constitute negligence. Ladner vs. N. O. Terminal Co., 139 La. 262, 71 So. 503.

I am unable to persuade myself that the opinion of my associates, for whose views I have the highest regard, is in accord with the jurisprudence of this State. On the contrary, in my opinion, it does violence to established doctrines and annihilates the defense of contributory negligence in railroad crossing cases.

I therefore respectfully dissent.