## SERPAS et al. v. COLLARD MOTORS, Inc., et al.*

### No. 16837.

Court of Appeal of Louisiana. Orleans.

Jan. 24, 1938.

*Rehearing refused Feb. 21, 1938; writ of certiorari denied April 4, 1938.

262

Clarence E. Strauch, of New Orleans, for appellants.

St. Clair Adams & Son, of New Orleans, for appellee.

McCALEB, Judge.

The plaintiffs in this suit are the six surviving children of the late Mrs. Louise Marie Melerine, widow of John Serpas, who died as a result of injuries received by her in an automobile accident. The catastrophe occurred on February 9, 1937, at about 7 p. m., at or near the downtown river corner of Elysian Fields avenue at its intersection with North Villere street in the city of New Orleans. The deceased, while in the act of crossing Elysian Fields avenue from the downtown river side of the roadway of the intersection of North Villere street, to the neutral ground or uptown side, was run into and knocked down by an automobile owned by Collard Motors, Inc., which was being driven by one Lloyd J. Boe.

Plaintiffs seek to recover damages for the death of their mother, which allegedly was caused by the wrongful acts of the defendants. The named defendants in the petition are Lloyd J. Boe, the operator of the car, Collard Motors, Inc., the owner, and the Ætna Casualty & Surety Company, the insurance carrier of Collard Motors, Inc.

On motion filed by the plaintiffs on the day the case was called for trial in the district court, the suit was dismissed against the defendant Lloyd J. Boe. The insurance carrier for Collard Motors, Inc., has also been dismissed from the proceeding on an exception of no cause of action sustained by the trial court and from which judgment no appeal has been taken. Hence the only problem submitted for our review is confined to the asserted liability of Collard Motors, Inc.

The theory of plaintiffs' case respecting that defendant is founded upon the premise that Boe, the driver of the automobile, was intoxicated at the time of the accident and that Collard Motors, Inc., acting through its agent, one A. L. Trebucq, was guilty of negligence in permitting Boe to use the car when it knew, or should have known, that the latter was incompetent to drive by reason of his inebriation.

Collard Motors, Inc., denies (1) that the accident occurred through Boe's negligence; (2) that Boe was drunk; (3) that its employee lent him the car; (4) that, alternatively, if the car was loaned, its employee was without knowledge and had no reason to believe that Boe was an incompetent driver; (5) that, alternatively, if its employee was aware of Boe's condition and, notwithstanding it, permitted the latter to use the car, then its agent was acting beyond the scope and course of his employment and not in furtherance of the defendant's business; and (6) that, finally, the deceased was guilty of contributory negligence which was the proximate cause of her death.

The case proceeded to trial on these issues, and the district judge, after hearing the evidence, dismissed the plaintiffs' suit. Wherefore this appeal.

The trial court, in its reasons for judgment, exonerated Boe from fault. It further held that Boe was not drunk at the time the accident occurred and that, if he had been drinking, he was not so intoxicated as to prevent him from handling the automobile with safety.

The evidence presented in most damage suits is invariably conflicting. This case is no exception to the rule. We find, however, certain undisputed facts in the record which may be set forth preliminarily before consideration is given to the problems in controversy.

Collard Motors, Inc., is engaged in the business of selling and trading new and used automobiles in the city of New Orleans. A. L. Trebucq is employed by it as a salesman in the used car department. On February 8, 1937, Trebucq, with defendant's consent, took out of its garage a certain used Dodge sedan for the purpose of demonstrating it to a prospective purchaser. The prospect was Lloyd J. Boe, a personal friend of the salesman. After Trebucq obtained possession of the car, he attended a funeral in it and then drove it to his home and stored it overnight in his garage. In the meantime, he communicated with Boe and made an engagement with the latter to show him the car on the following day (which was Mardi Gras Day in New Orleans). In addition to the planned demonstration of the automobile, it was decided by Trebucq and Boe that, inasmuch as the next day was Mardi Gras, it would be pleasant to attend the Carnival parades in the car together with their wives

and a Mr. Gross and, in short, that the business on hand would be combined with a joyous holiday. Accordingly, on Carnival Day, Mr. and Mrs. Trebucq called at the Boe residence about noon, where they were joined by Mr. and Mrs. Boe and Mr. Gross. The party started out from there in defendant's automobile, which was driven by Trebucq. They attended the parades on Canal street and drove generally about the city. Later in the afternoon, they traveled down to St. Bernard parish in order to view the parade of the Arabi Carnival Club. From there they drove back to New Orleans and stopped at Reuther's Café, located in the 4700 block of St. Claude avenue, for the purpose of partaking of food and drink. The party arrived at Reuther's (which is a combined saloon and restaurant) between 5 and 6 o'clock p. m. A few minutes before 7 p. m., Boe left the café in the defendant's automobile with the intention of getting his sister-in-law at her home (located in the 1900 block of Spain street), and having her return with him to join his companions at Reuther's. He drove the car up St. Claude to Elysian Fields avenue. He then proceeded out Elysian Fields avenue in the direction of Lake Pontchartrain. As he reached the riverside intersection of Elysian Fields avenue and North Villere street, the automobile collided with Mrs. Serpas, who was walking across the downtown roadway of Elysian Fields avenue, causing the injuries which resulted in her death. The police were summoned and Boe was placed under arrest. He was brought to the Fifth precinct station and was there booked, at 7:50 p. m., with drunken and reckless driving and causing injury. He was paroled at 9:26 p. m., but was not actually released from custody until an hour or so after the parole order was received by the police.

The first question confronting us for decision is whether the death of Mrs. Serpas is attributable to Boe's negligent operation of the automobile and whether he was intoxicated at the time the accident happened.

Boe's version of the accident is that Mrs. Serpas, a woman 73 years of age, darted out from behind an automobile parked near the intersection of Elysian Fields avenue and Villere street and ran into the roadway in front of his car. He says that he was traveling at a speed of between 15 and 20 miles an hour at the time he noticed the old lady and that he

was approximately 4 feet from her when he first saw her. He asserts that, in the emergency thus presented, he slammed on his brakes, swerved his car sharply to the right; that she collided with the left front headlight and fender of the vehicle; and that the car traveled a distance of only 4 feet from the point of the impact before it came to a full stop. He jumped out of the car and held the old lady in his arms until the police arrived.

There were no eyewitnesses to the accident other than Mrs. Serpas, whose lips have been sealed by death, and Boe, the driver of the automobile. The plaintiffs, however, produced on the trial of the case a man named Campo who claims to have witnessed the occurrence, but his testimony, as contended for by counsel for defendant, is unsatisfactory and valueless. In the absence of other direct evidence, we look to the circumstances obtaining at the time of the occurrence and the physical facts of the case in order to resolve whether Boe's statement of the incident reveals the truth.

Plaintiffs produced officer H. F. Luthjens of the New Orleans police force, who arrived upon the scene shortly after the accident happened. He testified that: At about 7 p. m., he received a radio call that there had been an accident on Elysian Fields avenue and North Villere street. He immediately drove to the place of the occurrence and found Boe standing in a stooped position holding Mrs. Serpas' head in his arms. Boe and the old lady were situated at a point approximately 5 feet from the neutral ground of Elysian Fields avenue and about 20 feet beyond the intersection of Villere street. The automobile driven by Boe was positioned adjacent to where the old lady was lying. The officer says that he noticed skid marks on the dry pavement for a distance of 50 feet from the point where the brakes of the car had been applied to the place where it had stopped. He positively states that Boe was drunk and that he found in the automobile a quart bottle of Hiram Walker whiskey three-fourths empty and a full pint of Cream of Kentucky whiskey. The officer placed Boe under arrest and the latter was conveyed to the Fifth precinct station in the police patrol.

The evidence of Officer Luthjens regarding the intoxicated condition of Boe is amply corroborated by the statements of other police officers who observed him while he was being detained at the Fifth precinct station. Captain William Peterson, Sergent William Gipsom, and Sergent Joseph Rembolt all testified to this effect.

Counsel for the defendant vigorously attack Officer Luthjens' statement and say that he bore a grudge of many years' standing against Boe. However, a reading of this policeman's testimony convinces us that he told the truth and that his evidence is reliable and trustworthy. Counsel likewise complain that the statements of Captain Peterson, Sergent Gipsom, and Sergent Rembolt are based upon hearsay rather than fact. While these officers' assertions are not as explicit as they might have been, we are satisfied that their testimony is sufficient to sustain the view that Boe was highly intoxicated at the time he was brought to the station house.

After due consideration of all the evidence adduced in the case, it is our belief that Boe had imbibed, prior to the time the accident occurred, a considerable amount of alcoholic liquor and that he was incapable of operating an automobile with safety.

We are also of the view that the killing of Mrs. Serpas resulted exclusively from Boe's negligent operation of the automobile. This deduction results from our disbelief in the declarations made by Boe when viewed in the light of the physical facts and surrounding circumstances of the case. Pictures produced by the plaintiffs, which were taken by the police the day after the accident occurred, effectively destroy Boe's statement that, at the time of the accident, he was traveling at the usual and stereotyped speed of 15 to 20 miles per hour. These photographs show a large dent on the left front fender of the vehicle and likewise reveal that the left front headlight is considerably bent upwards and towards the left. It is not conceivable that a car, traveling at a slow speed, coming in contact with a human body, would be damaged to the extent portrayed by these pictures. They are mute evidence of the fast rate of speed maintained by Boe at the time he struck the decedent. Moreover, the conclusion reached, as to the high speed of the vehicle, is confirmed by the fact that the car skidded upon the dry pavement some 50 feet from the time the brakes were applied to the point where it stopped. The statement of Boe that he was about 4 feet away from the deceased at the time he first saw her

running across the street, that he swerved, employed his brakes, and stopped within a distance of 4 feet from the point of impact, is likewise incredible even though he had been going at a speed of 15 to 20 miles per hour.

■ The defendant has pleaded the contributory negligence of the decedent, and it points to Boe's statement that the old lady darted out into the street from behind a parked automobile, as being adequate to exhibit that her act in this respect was the proximate cause of her death. But we feel that it is unlikely that this woman, 73 years of age, was sufficiently agile to run into the oncoming car in the manner described by Boe. It is more probable to believe that, in view of Boe's state of intoxication, he ran the old lady down while driving the car at a high speed and in a reckless manner. The act of driving an automobile in an intoxicated condition or in a reckless manner on the roads and highways is not only malum prohibitum but malum in se, for, in the words of the Supreme Court of the United States, "An automobile is, potentially, a dangerous instrumentality, as the appalling number of fatalities brought about every day by its operation bear distressing witness. To drive such an instrumentality through the public streets of a city so recklessly 'as to endanger property and individuals' is an act of such obvious depravity that to characterize it as a petty offense would be to shock the general moral sense." See District of Columbia v. Colts, 282 U.S. 63, 51 S.Ct. 52, 53, 75 L.Ed. 177.

■ Having adjudged that Boe was drunk at the time he struck Mrs. Serpas and that her death was caused through his negligence, we next consider whether he obtained possession of the vehicle without the knowledge and consent of Trebucq or whether the latter authorized him to use it. Boe and Trebucq both testified as witnesses for the defendant. An examination of their evidence reveals that, while they are in accord in regard to certain facts, there is a plain inconsistency in their statements with respect to Boe's possession of the automobile. Boe states that, after the party had been at Reuther's Café for some time, it suddenly occurred to him that he and his wife had an appointment to visit his sister-in-law at 6 o'clock; that, at the time he remembered this engagement, it was nearly 7 o'clock; and that he thought it would be a good idea to get his sister-in-law and bring her to Reuther's so that she might enjoy the party. He further says that he secured Trebucq's consent to use the car for the dual purpose of fetching his sister-in-law and also to investigate the qualities of the automobile, inasmuch as he had never driven it.

On the other hand, Trebucq states that, shortly after the party arrived at Reuther's Café, he missed Boe; that he went to the front of the place to look for him and found that the automobile had been taken. We are not impressed with his statement. Trebucq and Boe were good friends and the latter was the prospective purchaser of the automobile. It seems more plausible to deduce that Trebucq, as a member of the party, was fully informed about Boe's engagement with his sister-in-law and that he gladly consented to his use of the car in the hope that a sale might be consummated.

■ Being of the opinion that Boe obtained the permission and consent of Trebucq to use the automobile, the problem narrows itself down as to whether Trebucq knew, or should have known, that Boe was intoxicated, for it is well settled that the lender of an automobile is not responsible for the negligence of the borrower unless the lender had knowledge of the fact that the borrower was an incompetent operator. See Baader v. Driverless Cars, Inc., 10 La.App. 310, 120 So. 515, and Anderson v. Driverless Cars, Inc., 11 La.App. 515, 124 So. 312. Compare Graham v. American Employers' Insurance Co. of Boston, Mass., La.App., 171 So. 471, and Dr. Massony v. Truett Nash Motor Co., Inc., et al., 177 So. 829, decided by this court on January 10, 1938.

■ Hence, the question is, Did Trebucq know, or should he have known, that Boe was drunk at the time the latter requested the use of the automobile? Trebucq has testified that Boe was sober. But is his statement in this respect entitled to credence when it is scrutinized in the light of the surrounding circumstances and the physical facts of the case? It is undisputed that two bottles of whiskey were found in the automobile at the time of the accident and that one quart bottle was three-fourths empty. When first questioned about the whiskey in the car, Trebucq denies that he knew it was there. But later in his testimony he admits that the liquor was obtained that day at a saloon. His answers, on cross-examination with

respect to the whiskey, are most unsatisfactory. For instance, when asked whether he could explain how the whiskey got into the automobile, he says, "I don't know anything of the whiskey." Later in his examination, when interrogated again on this point, he replies, "After we left the house I found out there was whiskey in the car." He was then asked as to why the whiskey was put in the automobile and he answered, "I don't know," but he finally admits that it was purchased in a saloon.

It is manifest that this party of friends were out on a jaunt for the purpose of enjoying the Carnival festivities, and, as appears by the record, the barrooms of the city were wide open and at least one of them had been patronized by the group. The only purpose for which two quarts of whiskey could be reasonably desired by them, was for use between barrooms or as a sort of emergency ration. Trebucq admits that he had a few drinks and also that Mrs. Trebucq and Mr. Gross had some, but he says he does not know whether Boe had anything to drink or not. We cannot believe that he did not know that Boe had been drinking, and he must be charged with knowledge of the fact that the latter was intoxicated, inasmuch as Boe was quite drunk at the time of the accident, which occurred just a few minutes after he left the saloon.

█ It is said that Trebucq was without authority to use the automobile on Mardi Gras Day. We find no merit in this point. It is true that Trebucq testified that "we were supposed to return automobiles after each demonstration and the reason I did not return this car was because I was trying to sell Mr. Boe the automobile. I had sold him one previously by taking him and his wife out for a ride and assumed that it was all right to keep the automobile over night." But the witness also stated that, while he did not get permission in this instance, it was the custom to keep automobiles out overnight and the next day for demonstration. Furthermore,. Officers Haley and Berrigan, the husbands of two of the plaintiffs, testified that, on the day after the accident, they called upon Mr. Heyl, an officer of the defendant in charge of the used car department, to inquire about the car and that he told them that Trebucq had the automobile out to demonstrate it to a man named Boe. Thus, according to the testimony of Trebucq (defendant's only witness on this point), it was the custom of the defendant to permit cars to remain out overnight for demonstration. In view of this, defendant cannot be heard to say that Trebucq acted beyond the scope of his employment in the instant case. See Smith v. Howard Crumley & Co., La.App., 171 So. 188.

█ Finally, it is maintained that Trebucq exceeded his authority in permitting Boe to drive the car in view of his intoxicated condition and that, in truth, Boe did not take the automobile for demonstration purposes but solely for a mission of his own. With respect to the latter postulation, it is difficult to perceive that Boe used the car exclusively for the purpose of visiting his sister-in-law in view of his statement that he wanted to try the car out by driving it himself. Moreover, Trebucq testified that he considered Boe a likely prospect and it is apt to observe that the salesman had general authority to allow a prospective purchaser to drive the car even though the prospect used it in connection with his own pursuits. With respect to the question as to whether Trebucq exceeded his authority in permitting Boe to drive the car while in a drunken condition, it is enough to point out that Trebucq was clothed by his employer with the discretion of determining whether a prospective purchaser was a capable or an incompetent driver. Corporations can only act through their agents and employees, and it is plain that it was never intended by the defendant that its salesman should return to the main office with the prospective purchaser in order that the officers of the company might decide whether the latter was a competent driver. On the contrary, the discretion as to the capabilities of the prospect was left entirely to the salesman.

█ The deceased was 73 years old, and the plaintiffs are her children. The accident occurred at 7 p. m. and she died of her injuries at 9:45 p. m. on the same day. Under the law, plaintiffs are permitted to recover not only for the suffering endured by their mother but also the damages sustained by them as a result of her death. We feel that a judgment of $1,000 to each plaintiff will be a proper award. Seelhorst v. Ponchartrain R. Co., 11 La.App. 586, 123 So. 626. In addition to this, the plaintiff John Serpas is entitled to recover for the expense of $344.71 representing the funeral bill of the deceased which was borne by him.

For the reasons assigned, the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of the plaintiffs, John Serpas, William Serpas, Mrs. Camille Serpas, wife of Winfield Morales, Mrs. Marie Serpas, wife of James Haley, Mrs. Louise Serpas, wife of Clarence Lindberg, and Mrs. Jane Serpas, wife of Samuel Berrigan, and against the defendant, Collard Motors, Inc., in the full sum of $6,000, with legal interest thereon from date of judicial demand until paid and all costs. It is further ordered, adjudged, and decreed that the plaintiff, John Serpas, have judgment against the defendant Collard Motors, Inc., in the sum of $344.71, in addition to the amount already herein decreed, with legal interest thereon from judicial demand until paid and all costs.

Reversed.